## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

JAMES MENEAR, Individually and on Behalf of All Others Similarly Situated,

          Plaintiffs,

vs.

AMSHER COLLECTION SERVICES INC,

          Defendant.

Case No.: 19-cv-662

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3.      Plaintiff James Menear is an individual who resides in the Eastern District of Wisconsin (Waukesha County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes, namely alleged personal telecommunications services.

5.      Defendant Amsher Collection Services, Inc. ("ACS") is a foreign business corporation with its principal place of business located at 4525 Southlake Parkway, Suite 15, Hoover, Alabama 35244.

6.      ACS does substantial business in Wisconsin and maintains a registered agent for service of process at Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

7.      ACS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.      ACS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9.      ACS is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

10.      On or about September 25, 2018, ACS mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "AT&T U-VERSE" ("AT&T"). A copy of this letter is attached to this complaint as Exhibit A.

11.      Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12.      Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

13.      Upon information and belief, Exhibit A is the first letter that ACS sent to Plaintiff regarding the alleged debt referenced in Exhibit A.

14.      Exhibit A includes the debt validation notice that the FDCPA, 15 U.S.C. § 1692g(a), requires that debt collectors mail alleged debtors along with, or within five days of, the initial communication:

2

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

15.     Immediately below the validation notice, Exhibit A includes the following text:

If you feel you are or have been a victim of Theft of Identity, please call AT&T for Wireline at 1-866-718-2011 and for Mobility 877-844-5584.

Exhibit A.

16.     Exhibit A is confusing and misleading to the unsophisticated consumer.

17.     15 U.S.C. § 1692g(a)(4) states:

(a) Notice of debt; contents

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> …
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

18.     If a consumer is, or believes himself to be, a victim of identity theft and therefore, he does not owe all or part of the alleged debt, the consumer disputes the debt.

19.     To trigger verification, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4).

3

20.     Upon receiving a written dispute from a consumer within the 30-day debt validation period, the FDCPA requires the debt collector to contact the creditor and obtain verification of the debt before conducting any further collection efforts.  15 U.S.C. § 1692g(b).

21.     The consumer's dispute does not effectively trigger the verification requirement unless it is communicated in writing, and sent to the debt collector during the initial thirty-day period following receipt of the validation notice. *See, Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 348 (7th Cir. 2018).

22.     <u>Exhibit A</u> confusingly directs the debtor to notify AT&T about a subset of disputes – identity theft – without informing the consumer that the dispute must also communicate the dispute in writing to ACS to trigger verification.  *See, e.g., Livermore v. Unifund CCR LLC*, No. 17-cv-1051-JPS, 2017 U.S. Dist. LEXIS 206542, at *11-12 (E.D. Wis. Dec. 15, 2017) (observing that contradictory instructions to contact both the creditor and the collection agency could plausibly confuse the unsophisticated consumer.) (citing *Macarz v. Transworld Sys., Inc.*, 26 F. Supp. 2d 368, 371 (D. Conn. 1998); *Green v. Universal Fidelity, L.P.*, No. 13-cv-1119-LA, Dkt. No. 17 at 2 (E.D. Wis. June 19, 2014)); *Weissman v. Collecto, Inc.*, No. 17-cv-4402, 2019 U.S. Dist. LEXIS 8600, at *16-17 (E.D.N.Y. Jan. 17, 2019);  *see also, Blair v. Collectech Systems*, No. 97-cv-8630, 1998 U.S. Dist. LEXIS 6173, at *7-8 (N.D. Ill. Apr. 17, 1998); *Rosenburg v. Transworld Sys.*, 2000 U.S. Dist. LEXIS 5486 (N.D. Ill. Apr. 13, 2000); *Spira v. Consiglio, Parisi & Allen*, No. 99-cv-870, 2001 U.S. Dist. LEXIS 24497, at *9-12 (E.D.N.Y. Jan. 3, 2001).

23.     The instruction to "call AT&T," which is offset and easily read, would confuse and mislead consumers who wish to dispute the debt for identity theft whether they also need to communicate their disputes to ACS to require ACS to cease collection and report the debt as disputed.  *See,* 15 U.S.C. §§ 1692e(8) and 1692g(b).

4

24.     Merely contacting AT&T does not necessarily require ACS to report the debt as disputed because information in creditors' files is not imputed to debt collectors. *See, Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) ("Courts do not impute to debt collectors other information that may be in creditors' files – for example, that debt has been paid or was bogus to start with.").

25.     Exhibit A also includes the following:

Payment can be mailed to 4524 Southlake Parkway, Suite 15, Hoover, AL 35244. Our phone number is 1-866-655-4308 or you can pay online using the website address and password below.

Exhibit A.

26.     Immediately below the above language, Exhibit A contains the following:

PAY ONLINE AT:

PASSWORD:

Exhibit A.

27.     Consumer fraud in the debt collection industry is widespread, and Exhibit A's black "pay online at" and "password" fields are confusing and misleading to the unsophisticated consumer who would be left wondering whether online payment was available and whether ACS was even acting as a legitimate collection agent. *E.g., FTC v. Swatsworth*, No. 17-cv-340-GCM, 2018 U.S. Dist. LEXIS 142696 (W.D.N.C. Aug. 22, 2018); *see also, Derosia v. Credit Corp. Sols.*, No. 17-cv-1671, 2018 U.S. Dist. LEXIS 50016, at *9-10 (E.D. Wis. Mar. 27, 2018).

28.     Plaintiff was confused by Exhibit A.

29.     The unsophisticated consumer would be confused by Exhibit A.

5

30. Plaintiff had to spend time and money investigating how and whether to respond to Exhibit A.

### The FDCPA

31. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

32. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

33. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

6

The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

34. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

35. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt

7

collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

36.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

37.     15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

38.     15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

39.     15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

40.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

41.     15 U.S.C. § 1692g(a) states:

a) Notice of debt; contents

    Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

42.     The debt collector must make the 15 U.S.C. § 1692g disclosures in a non-confusing manner. *See Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 317-18 (7th Cir. 2016).

9

43.     While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006):

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.

## COUNT I – FDCPA

44.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

45.     Exhibit A directs the consumer to submit a certain subset of disputes (disputes about identity theft) to the creditor rather than the debt collector.

46.     The failure to direct the dispute the debt collector results in the consumer forfeiting important rights under the FDCPA.

47.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g.

## COUNT II – FDCPA

48.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

49.     Exhibit A contains confusing and misleading representations as to whether and how the consumer may pay the debt online.

50.     Defendant violated 15 U.S.C. §§ 1692e and 1692(10).

10

## CLASS ALLEGATIONS

51.     Plaintiff brings this action on behalf of a Class.

52.     The Class consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) where the letter was sent between May 6, 2018 and May 6, 2019, inclusive, (f) and was not returned by the postal service.

53.     The Class is so numerous that joinder is impracticable.

54.     Upon information and belief, there are more than 50 members of the Class.

55.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.  The predominant common question is whether the Defendants complied with the FDCPA.

56.     Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

57.     Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

58.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

59.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

i.  actual damages;

11

ii.   statutory damages;

iii.   attorneys' fees, litigation expenses and costs of suit; and

iv.   such other or further relief as the Court deems proper.

Dated:  May 6, 2019

ADEMI & O'REILLY, LLP

By:   /s/ John D. Blythin
      John D. Blythin (SBN 1046105)
      Mark A. Eldridge (SBN 1089944)
      Jesse Fruchter (SBN 1097673)
      Ben J. Slatky (SBN 1106892)
      3620 East Layton Avenue
      Cudahy, WI 53110
      (414) 482-8000
      (414) 482-8001 (fax)
      jblythin@ademilaw.com
      meldridge@ademilaw.com
      jfruchter@ademilaw.com
      bslatky@ademilaw.com

12